**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 09-20206** |
| **BNP PETROLEUM CORPORATION,** | § | |
| | § | **Chapter 11** |
| DEBTOR. | § | |

**EMERGENCY MOTION FOR ADMINISTRATIVE ORDER UNDER 11 U.S.C. §§ 105(a)**
**AND 331 ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES OF PROFESSIONALS**

**IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY (20) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.**

**IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AND EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.**

**THE DEBTOR HAS REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTOR'S FIRST DAY HEARINGS ON AUGUST 7, 2009 AT 9 A.M.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

BNP Petroleum Corporation ("BNP" or the "Debtor"), files this Emergency Motion for Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

**I.**
**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**II.**
**BACKGROUND**

2.     On April 3, 2009 (the "Petition Date"), Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, and La Copa Field Services, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition (the "Involuntary Petition") against BNP Petroleum Corporation ("BNP").

3.     On May 20, 2009, BNP filed an answer to the Involuntary Petition, denying the allegations therein.

4.     On June 2, 2009, Raptor Capital International, LLC ("Raptor") filed three notices of transfer of claim pursuant to which Raptor provided notice that the claims of the Petitioning Creditors against BNP had been unconditionally sold, transferred and assigned to Raptor.

5.     On June 2, 2009, Raptor and the Petitioning Creditors filed a Joint Motion for Substitution of Parties [Dkt. No. 52], requesting that Raptor be substituted as the petitioning creditor in BNP's pending involuntary bankruptcy case (Case No. 09-20206) (the "Motion to Substitute").  On June 26, 2009, the Court entered an order granting the Motion to Substitute [Dkt. No. 67].

6.     With the filing of this Motion and other first-day motions, BNP has contemporaneously filed (1) a Consent to Order for Relief Pursuant to 11 U.S.C. § 303(h), consenting to an order for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"); and (ii) a Motion to Convert Case to Chapter 11, seeking to convert BNP's

Chapter 7 case to a case under Chapter 11 (collectively, the "<u>Consent Order and Motion to Convert</u>").  This Motion and all other first-day motions are subject to the Consent Order and Motion to Convert.  No trustees or examiners have been appointed, and no official committee of unsecured creditors has yet been formed.

7.     The Debtor is primarily an oil and gas operator and was founded in 1990, with offices in Houston, Texas and Corpus Christi, Texas.  The Debtor has operations throughout South Texas.  The company's operations include the exploration, development, and production of petroleum reserves.  The Debtor is engaged in a full-cycle exploration and production program that includes the purchase of land, seismic interpretation, drilling, facilities and pipeline construction, and oil and natural gas production.  The company's strategy for growth is to increase its reserves and production through exploration, development and acquisition of projects principally in South Texas.  Since its founding, the Debtor has successfully applied its technical knowledge and commercial experience to expand its interests into real estate development and oil field services management.

8.     The Debtor has suffered financially as a result of unpaid accounts receivable and a sharp decline in natural gas prices.  In the first quarter of 2008, the Debtor's affiliate, BNP Oil & Gas Properties, Ltd. ("<u>BNP Properties</u>"), was offered financing from Societe Generale Bank for a $16 million credit facility.  This financing agreement would have enabled BNP Properties to pay an account receivable due to the Debtor of more than $4 million.  However, the financing agreement failed to close as a direct result of BNP Properties' minority partner's breach of their partnership agreement.  In the second quarter of 2008, the owner of BNP Properties exercised his rights under a termination agreement in an attempt to obtain similar financing benefits that had been lost in the first quarter of 2008.  However, again as a result of BNP Properties' minority

partner's actions (this time it was a breach of the termination agreement), the second opportunity for BNP Properties to obtain a significant capital infusion also failed.

9.      As a result of the minority partner's breach of the termination agreement, BNP Properties was also unable to "hedge" its interest in its partnership reserves of 6.41 BCF of natural gas, as was contemplated by BNP Properties upon effectuation of a certain termination agreement.  At the time BNP Properties sought to hedge its portion of the natural gas reserves, the price of natural gas exceeded $13.50 per KCF.  Natural gas prices then fell substantially to around $4 per KCF, creating a loss to BNP Properties of more than $31 million.  As a result of these losses, BNP Properties has not been able to pay its largest creditor – the Debtor BNP Petroleum Corporation.

10.      In addition to the Debtor's unpaid accounts receivable, natural gas prices fell significantly from $15/mmbtu in the third quarter of 2008, to under $4/mmbtu today.  This sharp decline in natural gas prices combined with the current global economic recession has caused the Debtor to experience a corresponding decline in revenue and cash flow.  The resulting constraint on liquidity has negatively impacted the Debtor's ability to satisfy all of its debt obligations. The rising debt obligations precipitated the filing of the Involuntary Petition on April 3, 2009.  The Debtor has consented to an order for relief and has requested conversion of its case from chapter 7 to chapter 11 because it believes it can successfully reorganize its business.

11.      The Debtor did not hold any significant secured debt prior to the assignment of assets from BNP Properties to the Debtor on or about August 5, 2009.  The Debtor, however, was and still is a guarantor under that certain promissory note in an amount of approximately $4,023,426.42 (with principal and interest as of approximately July 31, 2009) (the "Prepetition Note") executed by BNP Properties and made payable to Margrave Holdings and Walter Oblach

(successors by assignment from The Frost National Bank) (the "Prepetition Lenders") and the associated deeds of trust, security agreements and related collateral documents (together with the Prepetition Note, the "Prepetition Credit Documents").  However, as a result of an assignment of assets from BNP Properties, the Debtor holds, or will hold secured indebtedness in approximately the amount of the Prepetition Note.  The indebtedness under the Prepetition Note has been in default since December 2008.  Therefore, although the Debtor holds, or will hold, secured debt under the Prepetition Note, the Debtor has always been (and still is) primarily liable for the prepetition indebtedness by virtue of its guaranty of the Prepetition Note.

12.     The Debtor's revenues for fiscal year 2008 were approximately $7.496 million, and its revenues for the period January 1, 2009 to May 31, 2009 were approximately $201,368.00.  As of the Petition Date, the Debtor employed approximately six (6) full-time employees.

13.     The Debtor has retained Bracewell & Giuliani, LLC to represent it in this bankruptcy case.[1]  The Debtor intends to file an application seeking this Court's approval of retention and employment of Bracewell & Giuliani LLP as counsel for the Debtor.  The Debtor files this Motion to establish procedures for the compensation and reimbursement of the Debtor's counsel and other court-approved professionals on a monthly basis.

### III.
### RELIEF REQUESTED

14.     By this Motion, the Debtor requests the entry of an order authorizing and establishing procedures for compensating and reimbursing court-approved professionals ("Professionals") on a monthly basis, comparable to those procedures established in other large Chapter 11 cases filed in this district.  Such an order will enable the Court and all other parties to

---

[1] Bracewell has received no payments from the Debtor since the date of retention other than a $25,000 retainer.

more effectively monitor the professional fees and expenses generated in this case as they are incurred.

## *Monthly Interim Compensation and Reimbursement*

15.     The Debtor proposes that the payment of compensation and reimbursement of the Professionals on a monthly basis be structured as follows:

(a)     Every 20th day of each calendar month following the month for which compensation and/or reimbursement is sought (the "Statement Due Date"), and pending Court approval thereof, each Professional retained in this Chapter 11 case pursuant to sections 327 and 1103 of the Bankruptcy Code seeking the interim payment of fees and reimbursement of expenses may:

(i)     submit an itemized monthly fee and expense statement ("Monthly Statement") in compliance with the provisions of subparagraph 15(b) below setting forth the fees and expenses for which payment is sought for the preceding month, with supporting detail; and

(ii)     serve a copy of such Monthly Statement on the Debtor, bankruptcy counsel for the Debtor, counsel for Committee of Unsecured Creditors, and the United States Trustee (collectively, the "Fee Parties").

(b)     Each Monthly Statement shall include, as an exhibit, time records that itemize services.  Monthly Statements must be actually received by the Fee Parties on or before the Statement Due Date.  Any Monthly Statement received after the Statement Due Date shall be deemed served on the Statement Due Date the following month.

(c)     The Fee Parties shall have ten (10) days from the Statement Due Date to review the Monthly Statements.  Any objections shall be served on the Fee Parties and the affected Professional or Committee Member no later than ten (10) days from the Statement Due Date; provided however, that all objections must be received by the Debtor's bankruptcy counsel by the close of business on the 10th day following the Statement Due Date (the "Objection Deadline").  After such review, and except as provided in subparagraph 15(d) below, the Debtor

shall pay in the ordinary course of business (typically, within ten (10) days from the Objection Deadline):

          (i)      Eighty percent (80%) of the fees requested by a Professional; and

          (ii)     Ninety (90%) of the expenses requested by a Professional or by a Committee Member.

        (d)     In the event that there are objections to any Monthly Statement submitted by a Professional, the objecting Fee Party shall, on or before the Objection Deadline, notify the Fee Parties and the affected Professional in writing of such objection.  The objection shall specify in detail the nature and basis of the objection.  Pending resolution of such objection, the Debtor shall promptly pay to the Professional, as to fees, the amount requested in the particular Monthly Statement less the greater of (i) the amount in dispute or (ii) the twenty percent holdback provided in subparagraph 15(c)(i) above and, as to expenses, the amount requested less the greater of (i) the amount in dispute or (ii) the ten percent holdback provided in subparagraph 15(c)(ii) above.  The Professional and the objecting Fee Party shall endeavor to amicably resolve any objection within five (5) days after the Objection Deadline.  If a resolution cannot be reached in that period, the Professional may request that the Court resolve the dispute at the next regularly scheduled fee application hearing.  The failure of any Fee Party (or other interested party with standing to object) to object to the payment of any Monthly Statement within the ten (10) day period set forth above shall not be deemed to constitute a waiver of that party's right to object to any interim or final fee application filed by any Professional or preclude any disgorgement of any fees paid.

        (e)     The initial Monthly Statement shall be submitted and served in accordance with this paragraph on or before September 20, 2009, and shall cover the period from the later of (i) the Petition Date or (ii) the effective date of the approval of the Professional's retention by the Court to July 31, 2009.  Thereafter, each Monthly Statement shall be submitted and served in accordance with the terms set out above.

      16.    If any party in interest contends that any Professional has a conflict of interest or other affiliation requiring disqualification resulting from matters reasonably disclosed in

connection with the Professional's retention application or any amendment thereto, such party in interest shall immediately file an objection to the Professional's retention, detailing the alleged conflict or other disqualifying factors, and shall raise any such contention at the first hearing on interim compensation following such disclosure (unless an earlier hearing is scheduled by the Court in connection with the objection), or shall thereafter be estopped from doing so. Each Professional shall have a continuing obligation to disclose any matter that may affect qualification for court-approved employment under the Bankruptcy Code or disqualification from employment under any relevant ethical consideration.

<em><u>Interim Fee Applications</u></em>

17.     The Debtor also requests that the Court's order set certain procedures with regard to interim fee applications by a Professional in this Chapter 11 case.  The Debtor proposes that all interim fee applications cover the same periods and that all fee applications relating to a particular period be heard during the same hearing.  Specifically, the Debtor proposes the following:

(a)     The initial uniform period to be covered by interim fee applications will be from the Petition Date through July 31, 2009, and subsequent interim fee applications will cover each successive four-calendar-month period thereafter.

(b)     To be considered on an interim basis, an application would have to be timely filed and served within forty-five (45) days of the close of each interim fee period (the "<u>Application Filing Period</u>").  If not filed timely, an interim application would be considered during the next Application Filing Period.

(c)     Regardless of the date on which an interim fee application is filed, all objections to interim fee application would be filed within twenty-three (23) days of such filing.

(d)     Hearings on interim fee applications will be held on the next preset hearing date following the day on which objections were due.

18.     The Debtor further requests that the Court limit the notice of hearings to consider interim applications for application for compensation and reimbursement filed by a Professional to parties on the limited Service List as set forth in the Initial Order for Complex Chapter 11 Bankruptcy Case.  Giving notice of the hearing to these entities should reach the parties most active in these cases and will save the expense of undue duplication and mailing.

19.     The procedures outlined above will enable all interested parties to closely monitor the costs of administration in this Chapter 11 case.  Moreover, they will permit the Debtor to maintain a more level cash flow and to implement more efficient cash management procedures.

## IV.
## AUTHORITY FOR RELIEF

20.     Section 331 of the Bankruptcy Code provides in relevant part:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the Court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.

21.     Section 105(a) of the Bankruptcy Code provides in relevant part:

> The court may issue any order, process, or judgment that is necessary to appropriate to carry out the provisions of this title.

22.     The proposed procedures for compensating and reimbursing court-approved professionals are consistent with those established in other Chapter 11 cases in this district.  Such procedures are needed to avoid having professionals fund the reorganization proceeding.  *In re Int'l Horizons, Inc.*, 10 B.R. 895 (Bankr. N.D. Ga. 1981) (court established procedures for monthly interim compensation).  Appropriate factors to consider include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to achieve a successful

reorganization of the debtors." *Id.* at 897-98. The Debtor submits that the procedures sought herein are appropriate in consideration of these factors.

## V.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtor requests this Court enter its order establishing procedures for interim compensation and reimbursement of expenses of professionals and grant such other and further relief as the Court may deem just and proper.

Dated: August 5, 2009.

Respectfully submitted,

**BRACEWELL & GIULIANI, L.L.P.**

By:  _/s/ Marcy E. Kurtz
      Marcy E. Kurtz
      Texas Bar No. 11768600
      Marcy.Kurtz@bgllp.com
      Chris S. Tillmanns
      Texas Bar No. 24060730
      Chris.Tillmanns@bgllp.com
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone:    (713) 223-2300
      Facsimile:    (713) 221-1212

**PROPOSED ATTORNEYS FOR THE DEBTORS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been

served on the parties listed in the attached Service List via electronic means as listed on the court's

ECF noticing system or by regular U. S. First Class Mail on this 5th day of August, 2009.

By: <u>/s/ Marcy E. Kurtz  </u>
Marcy E. Kurtz