IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| BNP PETROLEUM CORPORATION | § | Case No. 09-20206 |
| | § | (Chapter 11) |
| Debtor. | | |

**EMERGENCY MOTION OF SEASHORE INVESTMENT MANAGEMENT TRUST TO ENFORCE DEBTOR'S AGREEMENT ANNOUNCED ON THE RECORD TO CONVERT CASE TO CHAPTER 7**

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING.  YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY (20) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER.  IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY DAYS, YOU MUST RESPOND WITHIN THAT TIME.  IF THE COURT SETS AND EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.  IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

MOVANT HAS REQUESTED THAT THIS MOTION BE CONSIDERED ON SEPTEMBER 11, 2009 AT 10:30 A.M.

Seashore Investment Management Trust ("Seashore"), a creditor and party-in-interest in this bankruptcy case, hereby files its Emergency Motion ("Motion") to Enforce Debtor's Agreement Announced on the Record to Convert Case to Chapter 7.  In support thereof, Seashore respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On April 3, 2009 (the "Filing Date"), Baker Hughes Oilfield Operations, Inc., Schlumberger Technology Corporation, and La Copa Field Services, Inc. (collectively, the "Petitioning Creditors") filed an involuntary Chapter 7 petition against BNP Petroleum Corporation ("BNP" or "Debtor").

3. On August 5, 2009, BNP filed its motion to convert this case to a case pending under Chapter 11. (Docket No. 91). On August 7, 2009, the Court entered its order approving BNP's motion to convert. (Docket No. 116).

4. Also on August 5, 2009, the Debtor filed various motions, including a motion ("DIP Motion") to approve debtor in possession financing ("DIP Loan") to be provided by Blackgate Resources, LLC ("Blackgate" or "DIP Lender"), who is the proposed purchaser of the Debtor's assets identified in the Purchase and Sale Agreement ("PSA") discussed below. (Docket No. 99). The Court granted the DIP Motion, on an interim basis, to a maximum funding up to $100,000. In response to the DIP Motion, on August 19, 2009, Seashore filed its Objection to the DIP Motion, arguing, *inter alia*, that the DIP Loan was unnecessary to fund the Debtor's operations, that it included onerous terms that forced the Debtor to quickly sell its assets to Blackgate, and that it was an integral part of the Debtor's scheme to defraud creditors. (Docket No. 193).

5. On August 12, 2009, the Debtor filed a motion ("Bid Procedures Motion") seeking approval of certain bidding procedures and seeking authority to hold an auction to sell its assets to the highest bidder. Debtor's Expedited Motion for an Order Approving the Sale of Assets Free and Clear of Liens, Claims and Encumbrances and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases. (Docket No. 156). On August 28, 2009, Seashore filed an Objection ("Bid Procedures Objection") to the Bid Procedures Motion, arguing, *inter alia*, that the proposed bid procedures defeated any semblance of a competitive auction process by effectively requiring an immediate sale to Blackgate while denying other potential purchasers any meaningful opportunity to perform due diligence. (Docket No. 230). On August 31, 2009, the Official Committee of Unsecured Creditors ("Committee") filed a Partial Joinder to the Bid Procedures Objection. (Docket No. 239).

6. In addition to the objections described above, Seashore filed several motions seeking relief against the Debtor. In particular, on August 12, 2009, Seashore and Hector Canales, as Trustee for the Black Children's Independent Trust ("Children's Trust"), filed a Joint Motion for Appointment of a Chapter 11 Trustee ("Trustee Motion"). (Docket No. 140). The Trustee Motion seeks appointment of a trustee to bring credibility and independence to the Debtor's operations, largely because the Debtor's current chairman and CEO, Paul Black, is involved in a scheme, by establishing an "exotic" transaction, to defraud creditors and other parties in interest. On August 31, 2009, the Committee joined the Trustee Motion. (Docket No. 236). On August 31, 2009, the Debtor filed an Objection to the Trustee Motion. (Docket No. 233).

7. On August 18, 2009, Seashore filed its Motion ("Abstention Motion") For Stay/Abstention in Favor of Pending Arbitration Proceedings, urging this court to abstain from

adjudicating issues that are part of a pending arbitration proceeding involving Seashore, Paul Black, and entities owned and/or controlled by Paul Black. (Docket No. 184). On August 31, 2009, the Debtor filed an Objection to the Abstention Motion. (Docket No. 234).

8. Also on August 18, 2009, Seashore filed a Motion ("Motion to Lift Stay") for Relief from the Automatic Stay to Add the Debtor as a Party to Pending Arbitration Proceedings. (Docket No. 185). Through the Motion to Lift Stay, Seashore seeks to add the Debtor to pending arbitration proceedings initiated by Paul Black and involving Seashore's rights and claims to and ownership in oil and gas interests owned by BNP Oil & Gas Properties, Ltd. On August 31, 2009, the Debtor filed an Objection to the Motion to Lift Stay. (Docket No. 235).

9. On September 1, 2009, the Court held a hearing ("September 1, 2009 Hearing") on (1) the Debtor's DIP Motion and objections thereto, (2) the Debtor's Bid Procedures Motion and objections thereto, (3) Seashore's Trustee Motion and objection thereto, (4) Seashore's Abstention Motion and objection thereto, and (5) Seashore's Motion to Lift Stay and objection thereto.[1] Seashore was prepared to provide extensive evidence, both written evidence and oral testimony, in support of Seashore's Trustee Motion. After hearing legal arguments in support of the various pending motions, but prior to the presentation of evidence, the Debtor, Seashore, and other parties represented at the Hearing announced an agreement in open court on the record. The agreement was that the parties would attempt to negotiate a settlement until the close of business on Friday, September 4, 2009 ("Settlement Deadline") and that in the meantime the Debtor would not transfer any assets or draw on the DIP Loan. Further, the Debtor agreed unambiguously, on the record, that if no settlement could be reached by the Settlement Deadline

---

[1] Several parties in interest, including the Committee, either joined the Objections and Motions filed by Seashore or filed their own objections to the Debtor's various motions.

with all parties, including Seashore, the Debtor would **convert its case to a case under Chapter 7 of the Bankruptcy Code.** The following excerpts from the partial transcript of the September 1, 2009 hearing (attached hereto as Exhibit A) make the terms of this agreement abundantly clear:

> MR. KAIM: Very simple.  Number one, these proceedings will stop today.  ***My client will negotiate with the debtor and with the proposed buyer, Blackgate, in good faith  through Friday. If we don't reach an agreement by Friday, BNP Petroleum will convert to a 7.***  And during the time that we're negotiating through Friday, BNP will not undertake any transactions, transfers.
>
> . . . .
>
> MR. JORDAN: Well, the only thing I'm -- maybe I was needing clarification on, I heard Mr. Kaim say that somehow, he's in control of whether we convert or not.  If we don't do a deal with him, we convert. I -- what I understood was, if we don't come back to Court on Friday with deals with the committees and all the creditors, hopefully, Mr. Kaim, but I --that would probably be the last one to do it, ***then we're going to convert the case***.  So we're not going to continue to argue, but if it's just Henry's client, I didn't hear that we were going to -- that we were definitely converting if you're the only holdout.
>
> MR. KAIM: ***That was the deal***.
>
> MR. JORDAN: If it is, it is. I just wanted clarification.
>
> THE COURT: ***Okay.***
>
> MR. JORDAN: ***So just to be clear, Mr. Kaim can control whether or not we convert the case. I was --***
>
> MR. KAIM: ***This is your proposal. This was your proposal, which I have accepted.***
>
> MR. JORDAN: ***I want it clear that that's the deal.***
>
> THE COURT: Okay.

Partial Transcript of September 1, 2009 Hearing at 25:5-11; 26:17-25; 27:1-12 (emphasis added).

      10.     The Debtor's agreement to convert if no deal could be reached by the Settlement Deadline was confirmed later in the hearing:

> THE COURT: Okay. So get together and work this thing out. If it doesn't work out, then we're going to have to -- we're going to know about it, and there's going to be further hearings.
>
> MR. KAIM: No, your Honor. If we can -- the deal is, as I said before, ***if there's no deal, it's going to a 7.***
>
> THE COURT: Okay.

*Id.* at 35:20-22.  No one present at the September 1, 2009 Hearing objected to this exchange or to the basic terms of the agreement as stated on the record.  *Id.* 35:24-25; 36:1-5.

11.     Pursuant to the parties' agreement, Seashore's attorneys and Toby Shor, Seashore's Trustee, attended a settlement negotiation session at the offices of the Debtor's attorneys on September 2, 2009 at 2:00 p.m.  Notably, Paul Black, the CEO of the Debtor, was not present at the negotiations.  Seashore negotiated in good faith for the sale of certain of its property interests, but no agreement was reached.  Blackgate's attorney stated that Blackgate would make a proposal to Seashore, but Seashore never received one.  In sum, Seashore negotiated with the Debtor and Blackgate, and complied with any obligation it had arising out of the agreement stated on the record at the September 1, 2009 Hearing.

12.     On September 4, 2009, the Debtor filed its Status Report Post September 1, 2009 Hearing ("Status Report").  (Docket No. 253).  According to the Status Report, the Debtor is now taking a position that it is excused from its obligations under the Settlement Agreement because the Children's Trust took an alleged "provocative action" against PBF Investments, Ltd. ("PBF"), a **<u>non-Debtor entity</u>** and because Seashore allegedly requested consideration in exchange for the sale of its share of property interests.  The Debtor also appears to state that because it has apparently reached an agreement with the Committee, it is somehow relieved of its obligation to convert its case to Chapter 7.

13. The Status Report contains a number of factual inaccuracies that, if accepted, deprive Seashore and others of the benefit of the bargain they struck at the September 1, 2009 Hearing. First, the agreement announced on the record did not prohibit any actions by creditors and other parties, particularly as they regarding non-debtors. The agreement on the record restricted **the Debtor** from transferring its assets and from receiving advances from the DIP Loan. Transcript of September 1, 2009 Hearing at 25:5-11; 26:17-25; 27:1-12. Thus, any action by the Children's Trust in state court against a non-Debtor has no effect on the Debtor's duties under the agreement. Second, Seashore did not breach any duty to negotiate in good faith by requesting consideration for the sale of its share of the oil and gas properties. As part of negotiating in good faith, Seashore, like any reasonable seller, is not required to make a gift to other parties. Finally, the fact that the Debtor apparently reached a settlement with the Committee does not relieve them of the duty to comply with their agreement announced on the record.

## RELIEF REQUESTED AND BASIS THEREFORE

14. Agreements stated on the record in open court are binding upon all parties present. As a result, the Debtor is bound by its agreement to convert its case to Chapter 7 if it could not reach a settlement with Seashore and others by the Settlement Deadline. Despite good faith negotiations, the Debtor and Seashore did not reach a settlement by the Settlement Deadline. Thus, despite the Debtor's arguments to the contrary, the Debtor's case must now be converted to Chapter 7.

15. A settlement agreement announced on the record in open court is binding upon all parties present. *Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995);

*see White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 528 (5th Cir. 1986) (upholding a settlement read into the record and remarking that "[l]itigants may not disavow compacts thus made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration"). Further, agreements announced on the record will be enforced according to the terms announced in open court and not according to any party's subjective belief. *In re Omni Video, Inc.,* 60 F.3d at 233. As the Fifth Circuit stated in *In re Omni Video, Inc.*, "[i]f the summary of the settlement announced in court failed to include a term, the attorneys should have objected." *Id.* Settlements announced on the record remain binding "even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing." *Holder v. Gerant Indus., Inc. (In re Omni Video, Inc.)*, 165 B.R. 22, 26 (Bankr. N.D. Tex. 1994), *aff'd sub. nom., In re Omni Video, Inc.*, 60 F.3d 230.

16. It is undisputed that the Debtor entered into a settlement agreement that was read into the record that required the Debtor to convert its case if no settlement could be reached by the Settlement Deadline. Partial Transcript of September 1, 2009 Hearing at 25:5-11; 26:17-25; 27:1-12. Henry Kaim, counsel for Seashore, clearly stated the terms of the agreement, as quoted above. *Id.* at 25:5-11. Shelby Jordan, counsel for BNP Oil & Gas Properties Ltd., even confirmed and clarified that the Debtor would convert to Chapter 7 if no deal could be reached with Seashore. *Id.* at 27:3-11. Moreover, the Debtor appears to admit its obligation in its Status Report: "The parties further agreed if no settlement could be reached following good faith negotiations conducted on the basis described above, the Debtor would convert this case to a case under Chapter 7 of the Bankruptcy Code." Status Report ¶ 2.

17. It is abundantly clear from the transcript that the agreement did not contain any terms limiting the actions of third parties or conditioning the Debtor's performance in any way.

Any subjective assertion of the Debtor that other terms and conditions must somehow be introduced as part of the agreement is irrelevant to the terms of the actual agreement. *See Kupcho*, 792 F.2d at 528. The agreement as stated was simple: if no agreement could be reached, the Debtor agreed to convert. That agreement is binding upon the Debtor, who was a party to the agreement and was present when the agreement was read into the record. *See In re Omni Video, Inc.*, 60 F.3d at 232. It is imperative that parties (and the Court) can rely on promises like the one made by the Debtor in this case. *See id.* Ignoring the settlement agreement and the Debtor's promise is an affront to the integrity of this judicial proceeding, will lead to greater inefficiency, and certainly will chill future negotiations. *See Kupcho*, 792 F.2d at 528. Despite the Debtor's binding promise, the Settlement Deadline has come and passed and the Debtor has refused to fulfill its promise and convert its case. Because the Debtor's agreement and promise to convert is binding, the Court must enforce the agreement and convert the Debtor's case to Chapter 7.

18. Any contention that Seashore failed to negotiate in good faith is flatly incorrect. Seashore attended and participated in settlement negotiations for several hours on the afternoon of September 3, 2009, as contemplated by the agreement. Despite the Debtor's stated importance of such discussions, the Debtor's CEO did not bother to attend. Seashore did seek consideration in exchange for **its** properties, although it never "demanded $2 million" as the Debtor asserts. Status Report at ¶ 6. Further, it should be unsurprising that in an arms-length sale of property interests, the seller would seek consideration. What is troubling is that the Debtor found it proper to reveal privileged settlement negotiations, *see* FED. R. EVID. 408, and even worse, that the Debtor has misrepresented the facts of those negotiations to the Court.

19. Any action taken by the Children's Trust related to state court litigation with PBF (a non-debtor entity) does not affect the Debtor's obligations under the September 1, 2009 record agreement. As read into the record, the agreement did not prohibit the Children's Trust from taking any action whatsoever. It only prohibited the Debtor from transferring its assets or from drawing on the DIP Loan. Second, the September 1, 2009 agreement could not conceivably bind actions by one non-Debtor against another in state court.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Seashore respectfully requests this Court to enforce the Debtor's Settlement Agreement and convert the Debtor's case to Chapter 7. Respectfully submitted this 8th day of September 2009.

By: /s/ Henry J. Kaim
Henry J. Kaim
Texas Bar No. 11075400
HKaim@kslaw.com
Mark W. Wege
Texas Bar No. 21074225
MWege@kslaw.com
Edward L. Ripley
Texas Bar No. 16935950
ERipley@kslaw.com
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Fax: (713) 751-3290

**COUNSEL FOR SEASHORE INVESTMENT MANAGEMENT TRUST**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail on September 8, 2009, to the parties on the ECF service list.

/s/ Henry J. Kaim_____
Henry J. Kaim

**BNP PETROLEUM EMAIL SERVICE LIST**

marcy.kurtz@bgllp.com
chris.tillmanns@bgllp.com
sjordan@jhwclaw.com
USTPRegion07.CC.ECF@usdoj.gov
ogalvarez@ogalvarezlaw.com
ddarche@bakerlaw.com
jpetrelli@bakerlaw.com
sbanks@hillrivkins.com
erothberg@wkpz.com
hray@wkpz.com
scitek@lammsmith.com
rsimank@cctxlaw.com
kmaraist@albmlaw.com
jabbour@suddenlinkmail.com
bkpfilings@dnglegal.com
Delaunay@plddo.com
rstedman@sessions-law.biz
philsnow@snowfogel.com
jhtlaw1@sbcglobal.net
lkeeling@wkcfirm.com
Austin.bankruptcy@publicans.com
jely@ewingjones.com
carldore@doreassociates.com
sduncan@prdg.com
thenderson@tsh-atty.com
prconstant@swbell.net
jhiggins@porterhedges.com
mvaughn@porterhedges.com
awolfshohl@porterhedges.com
wexlers@patenergy.com
svangel@hillrivkins.com
hal.morris@oag.state.tx.us
Ashley.bartram@oag.state.tx.us
Gale.gattis@bgllp.com
cadams@oakllp.com
rmoxley@oakllp.com
wdb@davlin.net
tzabel@zflaw.com
lhipp@zflaw.com
davida@publicans.com
Houston_bankruptcy@publicans.com
barrowlaw@sbcglobal.net
jharris@harrris-greenwell.com
mar@lawmar.net

HOU_IMANAGE-742874.1