**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BNP PETROLEUM CORPORATION** | § | **CASE NO. 09-20206** |
| | § | |
| Debtor. | § | **Chapter 11** |

**OBJECTION OF THE OFFICAL COMMITTEE OF UNSECURED CREDITORS TO
THE EMERGENCY MOTION OF SEASHORE INVESTMENT MANAGEMENT
TRUST TO ENFORCE DEBTOR'S AGREEMENT ANNOUNCED ON
THE RECORD TO CONVERT CASE TO CHAPTER 7**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") hereby files this objection ("Objection") to Seashore Investment Management Trust's ("Seashore") emergency motion (the "Motion to Convert") seeking to convert this case to a case under chapter 7, and in support thereof, respectfully submits as follows:

**I.**
**BACKGROUND**

1.    On April 3, 2009 (the "Petition Date"), an involuntary petition (the "Involuntary Petition") was filed against BNP Petroleum Corporation (the "Debtor") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.

2.    On August 5, 2009, the Debtor filed a Consent to Entry of Order for Relief, consenting to an order for relief under Chapter 7 of the Bankruptcy Code.  The Debtor also filed a Motion to Convert its case under Chapter 11 of the Bankruptcy Code.

3.    On August 7, 2009, the Court entered an order for relief under Chapter 7 of the Bankruptcy Code.  The Court also entered an order granting the Motion to Convert.  This case is now pending as a Chapter 11 case.

4.      On August 12, 2009, Seashore Investment Management Trust ("Seashore") filed a Joint Motion of Seashore Investment Management Trust and Hector Canales, as Trustee for the Black Children's Independent Trust (the "Trust") for Appointment of a Chapter 11 Trustee (Doc. No. 140) (the "Trustee Motion").

5.      On August 18, 2009, the Office of the United States Trustee appointed an official committee, comprised of five creditors, to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code.

6.      The Committee joined in the Trustee Motion.

7.      On September 1, 2009, the Court held a hearing on, among other things, the Trustee Motion.  Counsel for the Committee informed the Court that the Committee believed there was a deal to be made, just not the deal currently proposed.  Counsel for the Committee also informed the Court that the Committee would support the filing of BNP Oil & Gas Properties, Inc. ("BNP Properties") and the substantive consolidation of that entity with the Debtor.

8.      After lengthy argument, but prior to the Court taking any evidence, the Debtor indicated that it saw no other option but to convert the case to chapter 7, unless an agreement could be reached by the parties.  Seashore and the Debtor adjourned to the halls.  When they came back, they informed the Court that they would like to stand-down on the Trustee Motion to see if the parties could reach a settlement that would alleviate the need to continue the lengthy hearing on the Trustee Motion.

9.      The parties met the next day at the offices of Bracewell & Giuliani.  No global agreement was reached.

**II.**
**THIS COURT SHOULD NOT CONVERT THE CASE TO CHAPTER 7 OVER THE OBEJCTIONS OF THE DEBTOR AND THE CREDITORS' COMMITTEE**

10.     Seashore takes the position that the Debtor agreed that the case would automatically convert to chapter 7 if Seashore could not reach a settlement with the Debtor.  If this is the agreement that Seashore and the Debtor made, the Committee was not made aware of it.  When counsel for the Debtor, counsel for BNP Properties and counsel for Seashore retreated to the halls to discuss settlement, counsel for the Committee and other counsel for various creditors were not privy to those discussions.  Counsel for the Committee interjected himself into those discussions and understood that there was an agreement to "stand down" for the time being to see if a settlement could be reached.

11.     Notwithstanding what was said on the record, the Committee was led to believe that the agreement was simply to stand down and see if the parties could resolve their dispute. The Committee would never have agreed (not that its opinion was sought) to allow the fate of the case to rest in the hands of Seashore (an entity that may actually be a net debtor to the Debtor).

12.     Counsel for the Committee attended the meeting at Bracewell, but only after insisting that the Committee be represented.  Moreover, Counsel for the Committee spent more time in a break-room at Bracewell than in negotiations, as Seashore wanted to have isolated conversations with the Debtor and Blackgate.  Seashore's motives were not entirely clear to the Committee, but it appeared that Seashore was seeking an agreement from Blackgate that Seashore be guaranteed a minimum payment from the sale of assets.  Since it is the Committee's position that Seashore's interest in the properties that are to be sold are subordinate to the rights of the unsecured creditors, this agreement would have been in contravention of the priority scheme set forth in the Bankruptcy Code.  However, since Seashore's apparent understanding

was that it could simply not reach an agreement and the case would automatically convert to a chapter 7, it seems logical that Seashore would not be motivated to reach a settlement unless it could extract something it would not be able to obtain in bankruptcy (Seashore appears to be at least as content with the prospects of a chapter 7 trustee as it is with a chapter 11 trustee).

13.     The Committee and the Debtor have been negotiating to see if a satisfactory resolution to this case can be reached.  The Committee believes that these negotiations are fruitful and could lead to a settlement that may provide creditors with the best chance for recovery.  Therefore, the Committee believes that it is in the best interests of the creditors that the case not be converted to a case under chapter 7 at this time.

### III.
### CONCLUSION

14.     In sum, neither the Debtor nor the Committee (at this time) are interested in seeing this case convert to a chapter 7.  Seashore, likely a net-debtor to the Debtor, should not be entitled to control the fate of this case to the detriment of real creditors of this estate.  Any agreement that Seashore believes was reached between itself and the Debtor was not made clear to the Committee – if it was, the Committee would have objected.  Moreover, by the very nature of the agreement Seashore believes it reached, Seashore had every incentive not to reach a settlement unless it could extract something from the proposed buyer that it would not otherwise be able to obtain under normal bankruptcy and non-bankruptcy laws.  This is enough to cast doubt as to whether Seashore even *COULD* have negotiated in good faith (which is precisely why the Committee would have objected).

WHEREFORE, the Committee respectfully requests that this Court deny Seashore's request that the case be converted to a case under chapter 7, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of September, 2009.

**OKIN ADAMS & KILMER LLP**

By:  */s/ Christopher Adams*
Christopher Adams
Texas Bar No. 24009857
Email:  cadams@oakllp.com
M. Renee Moxley
Texas Bar No. 24065799
Email: rmoxley@oakllp.com
1113 Vine St. Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**PROPOSED COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2009 I served a copy of the foregoing via the Court's EM/ECF electronic system to all parties consenting to service through same, and to all parties on the attached service list by United States First Class Mail, postage prepaid.

*/s/  Christopher Adams*
Christopher Adams