UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
10/01/2013

| | | |
|---|---|---|
| IN RE: | § | |
| BNP PETROLEUM CORPORATION | § | CASE NO: 09-20206 |
| | § | |
| BNP OIL & GAS PROPERTIES, LTD. | § | CASE NO: 09-20612 |
| and | § | |
| BNP PETROLEUM CORPORATION | § | |
| | § | |
| | § | CASE NO: 10-02048 |
| | § | Jointly Administered Order |
| Debtor(s) | § | |
| | | CHAPTER 7 |

# MEMORANDUM OPINION AND ORDER ON
# MOTION TO SET ASIDE SHOR SETTLEMENT AGREEMENT

On this day came on for consideration the Motion to Set Aside Shor Settlement Agreement (the "Motion to Set Aside") filed by Paul Black ("Black"). The Court, having heard the evidence and arguments of counsel, and having reviewed the extensive briefing, finds as follows.

## BACKGROUND

This case began with an involuntary chapter 7 bankruptcy petition filed against BNP Petroleum Corporation on April 3, 2009. The alleged Debtor moved to convert the case to Chapter 11, which this Court granted and an order for relief under Chapter 11 of the Bankruptcy Code was entered on August 5, 2009. BNP Oil & Gas Properties, Ltd. then filed a voluntary chapter 11 petition on September 22, 2009. The cases were jointly administered and were converted to chapter 7 for cause on October 13, 2010. Michael B. Schmidt (the "Trustee) was appointed the Chapter 7 Trustee.

During the pendency of the bankruptcy an arbitration award was entered in favor of Toby Shor, Seashore Investments Management Trust, and 2004/GRAT ("Seashore") against BNP Oil

& Gas, Paul Black, and certain Black entities. On May 6, 2011, Seashore filed a motion seeking turnover of certain interests of Black in County Court at Law #3, Nueces County, Texas (the "State Court") in order to collect on the judgment against Black resulting from the arbitration.

In the bankruptcy case, on June 1, 2010, the Trustee commenced an action (the "Trustee Lawsuit") against Seashore, Black, and the Black Entities for actual and constructive fraudulent transfers, conversion, breach of fiduciary duty, turnover of estate property, equitable subordination, and aiding and abetting. The Trustee entered into two different potential settlement agreements. In bankruptcy cases any agreement or settlement with a trustee is subject to court approval and if a better offer is made, the trustee has a fiduciary duty to seek approval of the best offer.

First the Trustee and Black entered into a potential settlement agreement on June 8, 2011, in which Black agreed to transfer his interest in the Black entities to the Trustee and share with the Debtors 10% of the net proceeds from the operations of those entities, subject to certain minimum payments.[1] No cash was to be paid by Black to the Trustee. Pursuant to the potential agreement, Black immediately transferred the Black Entities to the Trustee. On the same day the Trustee announced the settlement in State Court where Seashore's turnover proceeding was pending. The Trustee also filed a Notice of Interest in Property and Notice that Automatic Stay is Applicable in the State Court Case.

---

[1] Specifically, the Black Settlement provided that Black would transfer his membership and partnership interests in the Black entities and would share with the Debtors 10% of the net proceeds from the operations of those entities, with a minimum monthly payment of $6,000 for ten years. The consideration to be paid was capped at $1,500,000. The Black Settlement did not provide for an up-front cash payment. Moreover, the Black Settlement provided for the release of Black and numerous other entities and persons who were not parties to the agreement. The only parties to the Black Settlement were the Trustee and Paul Black, but the agreement released claims against at least 28 other entities, in addition to full releases for James Black, III (Black's father), James Paul Black, IV (Black's brother), and Wendy Bennett (Black's wife).

Later, on June 24, 2011, and in response to the proposed Black Settlement Agreement, the Trustee and Seashore entered in a potential settlement agreement providing for the sale of all of the claims against Black and the Black entities to Seashore and a release of disputes between the Trustee and Seashore, in exchange for a cash consideration from Seashore to the Trustee. The Trustee was also to share in a portion of future recoveries that Seashore would obtain against Black and his entities.[2] On June 28, 2011, the Trustee and Seashore filed their Joint Motion to Approve the Sale and Conveyance of Estates' Rights, Settlement and mutual Release, dated June 24, 2011 (the "Seashore Settlement Agreement"). On July 19, 2011, and continuing on July 26, 2011, this Court conducted hearings on approval of the various settlement agreements, including the Seashore Settlement Agreement and the Black Settlement Agreement. In addition, an offer from a third party, Walter Oblach, was made during the hearing and considered. The Trustee urged approval of the Seashore Settlement agreement as the best deal for the bankruptcy estate.

At the hearing, counsel for Seashore advised the court about Seashore's prior attempts at turnover and notified the Court that Seashore intended to seek turnover of the Black interests as soon as the settlement was approved.[3] Following the hearing, the Court approved the Seashore Settlement Agreement and disapproved the other settlement agreements. The Court entered its

---

[2] In particular, the Sale Agreement provided for Seashore to pay the Trustee, upon approval by this Court, the sum of $260,000, and for Seashore to share recoveries it obtains from the Black Entities as follows (i) 50% of the first $500,000 actually recovered against the Black Entities, and (ii) 10% of all other amounts actually recovered against the Black Entities, up to a cap of $1,750,000. These percentages are net of contingent legal fees that may be incurred by Seashore. In exchange for Seashore's payment, and agreement to pay in the future, the Trustee was required to transfer to Seashore or its designee all claims and causes of action that the Debtors hold against the Black Entities for Seashore to pursue in its sole discretion. In addition, the parties agreed to release each other and to dismiss with prejudice the claims and counterclaims against each other that were pending. The agreement also included the Trustee's agreement to assist Seashore in collection efforts and agree that Seashore had an allowed claim of $26,203,994.66, but that Seashore's claim in the BNP Petroleum case was subordinated to claims of creditors other than the Black Entities.

[3] Henry Kaim, attorney for Seashore, stated: "And we're way ahead of everybody else because we've already got the judgment. And, in fact, on June 8th, the very day that they did this deal – and the deal was done to preclude us from getting it – we were set for hearing on a turnover where we would have gotten all of these limited partnership interest. . . And, therefore, as soon as you approve it, we're going to go get those partnership interests and liquidate them" Transcript of July 26, 2011 hearing at 14:13-18, 14:20-21.

3 / 11

Findings of Fact and Conclusions of Law on Joint Motion of Seashore and Michael B. Schmidt, Chapter 7 Trustee, to Sell Certain Assets of the Debtors' Estates Pursuant to Bankruptcy Code Section 363(b) and to Approve Sale Agreement entered July 26, 2011 and Order Granting Joint Motion of Seashore and Michael B. Schmidt, Chapter 7 Trustee, to Sell Certain Assets of the Debtors' Estates Pursuant to Bankruptcy Code Section 363(b) and to Approve Sale Agreement entered July 26, 2011 on July 26, 2011 (the "Settlement Order"). This Court also declined to approve the Black Settlement and the Walter Oblach proposal. Black appealed the Settlement Order on August 2, 2011.

On August 11, 2011, Seashore obtained a turnover order in State Court which conveyed ownership interest in 24 entities owned by Black to the Seashore Parties. On September 15, 2011, the Trustee filed his Emergency Motion for Authority to Convey Black Entity Interests to Seashore (the "Conveyance Motion"). The Conveyance Motion sought authority for the Trustee to transfer to Seashore the interests in the Black entities that Black previously conveyed to the Trustee.

Black objected to the Conveyance Motion and a hearing was held on September 19, 2011, at which time the August 11, 2011, State Court Turnover Order was admitted into evidence as Trustee's exhibit C. This Court granted the Conveyance Motion by order entered September 22, 2011 (the "Conveyance Order"). The Conveyance Order states that "in the event that Nueces County Court at Law #3 enters an Order that requires the Trustee to turn over the interest to Toby Shor, Trustee, then the Trustee is authorized to convey to Toby Shor, Trustee, all of the previously conveyed interest in the Black Entities . . . The Trustee is specifically authorized (and in that event is so directed) to make this conveyance effective by filing the Trustee's Conveyance of Rights, Titles and Interest. . . on the docket and mailing the original to

Toby Shor's counsel." The Conveyance Order was worded to make it clear that the Bankruptcy Court was not making any findings about the validity of any State Court orders with respect to Seashore's collection efforts. Black did not appeal the Conveyance Order and it became final long ago.

Seashore later obtained an order from State Court on November 11, 2011, in which the State Court judge reaffirmed Seashore's ownership but ordered the conveyance by Seashore of title in the Black entities to the Nueces County Sheriff. Black appealed the turnover orders and also appealed the arbitration award that forms the basis of Seashore's judgment against Black.

In the United States District Court, Black's appeal and Seashore's Motion to Dismiss Appeal were pending and fully briefed when Black filed the Motion to Set Aside, which the District Court noted was "actually a motion for relief from judgment or order under Federal Rule of Civil Procedure 60." (*Memorandum Opinion and Order*, Civil Action No. 2:11cv-258). Black did not file his Motion to Set Aside until at least December 11, 2012.[4] The United States District Court stayed the appeal pending this Court's ruling on the Motion to Set Aside. This Court conducted a hearing on the Motion to Set Aside on May 13, 2013, and took the matter under advisement.

As succinctly described by the United States District Court, "[i]n sum, Black's motion [to set aside] alleges that the Bankruptcy Court's approval of the Seashore Sale Agreement was fraudulently obtained after Seashore concealed from the Bankruptcy Court that Seashore and its attorneys: (1) were seeking a turnover order from the Nueces County Court at Law No. 3 that would illegally convey ownership of certain Black Entities directly to Seashore; (2) had entered into an agreement with the Canales Group, who oversaw the Black children's trust, whereby

---

[4] Black erroneously filed his Motion to Set Aside in Adversary Proceeding No. 10-2022, on December 11, 2012. He later filed the same motion in the main bankruptcy case on January 3, 2012. Even assuming the first filing date is the correct date to consider, it was over 16 months after the Settlement Order was entered.

5 / 11

Seashore would convey to them 10% of its recoveries from Black on the Arbitration Award; and (3) had convinced a limited partner of Black to breach fiduciary duties to Black by agreeing not to assist Black but to instead affirmatively provide Seashore with material assistance in its collection efforts." *id*.

## DISCUSSION

Black's Motion to Set Aside is based on Rule 60, Fed.R.Civ.Pro. (applicable via Rule 9024, F.R.Bankr.Pro.). Black did not specify which section of Rule 60 he was relying on, contending that the Settlement Order "was not entered into in good faith and was procured by fraud." The pertinent sections of Rule 60(b) which might apply in this case provide as follows:

> (b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously call intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party….
> (6) any other reasons that justifies relief.

The 60(b) provisions are subject to time constraints. "A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Rule 60(c)(1), F.R.Civ.Pro.

The Motion to Set Aside was not filed until at least December 11, 2012, over 16 months after the Settlement Order was entered. To the extent that Black seeks relief under Rule 60(b)(1)(2) or (3), his Motion to Set Aside is untimely. The one-year time bar is strictly enforced. *In re Garcia*, 2010 WL 3187590, at *5 (Bankr. S.D. Tex. 2010)("[T]he Fifth Circuit and other circuits have strictly enforced the one-year statute of limitations."). The time bar is

"absolute" and is not subject to tolling. *Id.; In re Sunnyside Timber, LLC*, 413 B.R. 352, 361 (Bankr. W.D. La. 2009). Even if the Rule included a discovery exception, Black made no showing that the alleged grounds for which he seeks relief were not known to him in time to seek reconsideration within the time allowed. To the extent that Black asks this Court to set aside the Settlement Order under Rule 60(b)(1),(2), or (3) it should be denied as untimely.

The catch-all category of Rule 60(b)(6) is likewise unavailable to Black. The "any other reason that justifies relief" category does not provide a free pass to escape the absolute one year time bar. To obtain relief under Rule 60(b)(6) a movant must demonstrate (1) "extraordinary circumstances" that are (2) other than the circumstances enumerated in Rule 60(b)(1)-(3). *Halliburton Energy Services, Inc. v. NL Industries*, 618 F. Supp. 2d 614, 652 (S.D. Tex. 2009)(*citing Hesling v. CSX Transp., Inc*. 396 F.3d 632 (5th Cir. 2005)); *U.S. v. Green*, 348 Fed. Appx. 917, 918 (5th Cir. 2009)(*citing Hess. V. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002)); see also *In re Garcia*, 2010 WL 3187590, at *5)("The Movant may not use Rule 60(b)(6) to simply extend the one-year statute of limitations"). "The Fifth Circuit has 'consistently held that relief under 60(b)(6) is mutually exclusive from relief under sections (1)-(5),' and that "[t]he reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)." *Halliburton*, 618 F. Supp. 2d at 652; *citing Hesling*, 396 F.3d at 643. Moreover, If a 60(b)(6) claim can be considered under one of the more specific sections of 60(b) then it should be rejected under 60(b)(6). *Halliburton, supra*.; *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000). Of course Black did not enumerate the provisions of 60(b) under which he seeks relief, much less point to specific reasons justifying relief under 60(b)(6) as opposed to 60(b)(1)-(3). Nothing in Black's pleadings suggests some "other reason that justifies relief" which might bring him under the "reasonable time" provision. "'Exceptional circumstances' are not present every

time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at." *Halliburton, supra*. at 653, *citing Atkinson v. Prudential Property Co.*, 43 F.3d 367, 373-74 (8th Cir. 1994). Again, even if Black did demonstrate some other reason that justifies relief, he had the burden to demonstrate that the Motion to Set Aside was brought within a reasonable time, which he failed to prove. *See, In re Aranda,* 2012 WL 6547310, at *1 (Bankr. N.D. Tex. 2012).

Thus, in order to go forward with the Motion to Set Aside and any discovery thereon, Black must succeed in proving to this Court that he has a "colorable claim' that the Settlement Order was procured by fraud on the Court. *Bowie v. Maddox*, 677 F. Supp. 2d 276, 285 (D.D.C. 2010); *Halliburton Energy Servs., Inc. v. NL Indus.,* 618 F. Supp. 2d 614, 654-55 (S.D. Tex. 2009)("Postjudgment discovery into alleged fraud is not appropriate unless there has been at least some showing of fraud." ). In applying the "colorable claim" or "prima facie" standard, courts have considered the briefing on the merits and the evidence in the record to determine whether the claim has merit. *Bowie, supra*. at 285. Having considered the evidence and arguments presented at the May 13, 2013, hearing, the briefs presented, and the record of the hearings on approval of the Settlement Agreement in July, 2011, the Court finds that Black's claims do not appear to be true, for reasons set forth below.

Rule 60(d)(3) provides that nothing in Rule 60 limits a court's power to set aside a judgment for "fraud on the court." "Fraud on the court" is a rarely applied doctrine that requires extreme circumstances. The fraud contemplated by Rule 60(d)(3) goes beyond fraud or misdeeds by a party, and covers "only the most egregious conduct" aimed at "defil[ing] the court itself," such as "bribery of a judge or members of the jury, or the fabrication of evidence by a party in which an attorney is implicated." *Jackson v. Thaler*, 348 Fed. Appx 29, 34 (5th Cir.

2009)(*quoting Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)); *see also Accord Fife v. NFN Hensley*, 2012 WL 6582438, at *1 (5th Cir. 2012). The doctrine applies only to a "material subversion of the legal process," such that the ordinary adversary system cannot expose the truth. *Jackson, supra*. at 34-35.

    Fraud on the court can only consist of conduct so egregious that it is impossible to expose it within a year of its occurrence. *Jackson, supra* at 34-35. The record in this case demonstrates that *no* fraud occurred in connection with the approval of the Seashore Settlement Agreement. Indeed, counsel for Seashore stated on the record at the July, 2011, hearings that they intended to immediately proceed in State Court with turnover proceedings. Just weeks after entry of the Settlement Order, the Trustee obtained permission from this Court to transfer the equity interest in Black's LLC's and LLP's directly to Seashore. Even earlier, by virtue of an Application for Turnover Order filed May 6, 2011, Black was on notice that Seashore sought turnover of the ownership interests held by Black. Seashore's intention to act in State Court was known to Black at the time the Seashore Settlement Agreement was approved and therefore it is impossible for Black to demonstrate any colorable claim for fraud on the court. In fact it is likely that Black's settlement with the Trustee and his conveyance of the Black Entities to the Trustee were done to subvert Seashore's turnover action pending in State Court at the time of the Black Settlement Agreement.

    Black's assertions in his Motion to Set Aside are essentially complaints about Seashore's post-settlement collection efforts. Whether or not Seashore followed Texas law in subsequent State Court proceedings is not a question to be addressed by this Court and no findings regarding the validity or appropriateness of post-settlement collection efforts is intended to be made herein. At the hearing to approve the Seashore Settlement Agreement, Seashore's attorney made it very

clear that they intended to proceed with turnover in State Court as soon as possible if the Seashore Settlement Agreement was approved. The merits of the Seashore Settlement Agreement, as well as the other pending offers of settlement, were reviewed by this court under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968), which requires that a compromise must be "fair and equitable." *Id.* at 424; *In re Aweco, Inc*. 725 F.2d 293, 298 (5th Cir. 1984), cert.den. 469 U.S. 880 (1984).

To establish that a settlement is "fair and equitable" the Court must, and did, consider the following factors:

- The probabilities of ultimate success should the claim be litigated;
- The complexity, expense, and likely duration of litigating the claim;
- The difficulties of collecting a judgment rendered from such litigation; and
- All other factors relevant to a full and fair assessment of the wisdom of the compromise.

- - *TMT Trailer supra* at 424.

This Court found that the Seashore Settlement Agreement satisfied the requirements established by the Supreme Court in *TMT Trailer* and that it was the best offer, and therefore approved it. Seashore's actions in State Court or subsequently do not affect this Court's determination that the Seashore Settlement Agreement was fair and equitable.

## CONCLUSION

For the reasons set forth herein, the Court finds that Black's Motion to Set Aside should be denied.

It is so ORDERED.

SIGNED 10/01/2013.

Richard S. Schmidt
United States Bankruptcy Judge